Frances KNAPCZYK, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

No. 60 C 772.

United States District Court
N. D. Illinois, E. D.
Jan. 8, 1962.

**284**

Robert L. Williams, Chicago, Ill., for plaintiff.

James P. O'Brien, U. S. Atty., Chicago, Ill., for defendant.

WILL, District Judge.

This case is here on appeal from the denial by the Appeals Council of the Social Security Administration of plaintiff's request for review of the hearing examiner's adverse decision. The appeal is taken under the provisions of 42 U.S.C.A. § 405(g) which vests the District Court with " * * * power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

The following facts appear from the pleadings and transcript before the court:

1. On June 21, 1956, plaintiff suffered an injury to her left arm and shoulder as the result of a fall on a staircase at her place of work. She did not, however, lose any time away from her job because of it. Subsequently, she was awarded benefits for this injury under the Illinois Workmen's Compensation Act in the lump sum of $4,794.00. This amount was intended to compensate her for a period of one hundred forty-one (141) weeks beginning from June 22, 1956.

2. On November 13, 1956, plaintiff suffered a heart attack which precluded her from doing any further work at all. She applied for Social Security benefits under 42 U.S.C.A. § 423 which provides for insurance payments to eligible persons for a permanent disability preventing them from engaging in gainful employment.

3. In March, 1959, defendant determined that plaintiff was entitled to benefits of $100.90 per month starting in July, 1957, and $108.00 per month commencing in January, 1959. She was thereupon issued a check for $2,032.20 for back benefits accrued.

4. In June, 1959, defendant notified plaintiff that in fact she was not entitled to any benefits under the Social Security Act from July, 1957 through July, 1958 because during this period she had been receiving payments under the Illinois Workmen's Compensation Act. In arriving at this conclusion defendant was relying on 42 U.S.C.A. § 424 which provided for either an offset or total withholding of benefits if "it is determined that a periodic benefit is payable for such month to such individual under a workmen's compensation law or plan of the United States or of a State on account of a physical or mental impairment of such individual * * *." The lump sum compensation payment from Illinois was prorated by defendant for the one hundred forty-one (141) week period and determined to be $34.00 per week. Since this amount, on a monthly basis, exceeded the benefit conferred by virtue of 42 U.S.C.A. § 423, defendant concluded that no payment under the Social Security Act should have been made between July, 1957 and August, 1958 in accordance with Section 224(b). Defendant limited his withholding to the time between these dates because Section 224 was effective only during the period July 1, 1957 to August 1, 1958.

5. Defendant thereupon withheld from future social security payments an aggregate of $1,311.70 representing thirteen (13) months payments of $100.90 per month.

The principal issues in this cause are whether (a) the amount of plaintiff's lump sum payment under the Illinois Workmen's Compensation Act was prop-

erly offset against her Social Security disability benefits for the months in question, and (b) she may be deemed "without fault" in accepting the alleged overpayment, and also whether the adjustment or recovery of the overpayment would defeat the purpose of Title II of the Social Security Act or would be against equity and good conscience, as provided in Section 204, 42 U.S.C.A. § 404.

Plaintiff's contention is that Section 224 contemplated an offset only when an actual duplication of benefits existed, i. e., when the recovery under the Social Security Act and the recovery under a workmen's compensation law or plan arose from the same disability. She further contends that in fact she suffered only one disability—the heart attack—because her other injury did not cause her to lose any work days, and, accordingly, she was not disabled by it. She finds support for this in the definition of disability given in Section 223(c) (2) which defines it as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

Defendant, for his part, contends that there is no justification for assuming that Congress intended to limit the reach of Section 224 to those cases in which there would be a duplication of benefits. His position is that the statute, in requiring that offset be made when benefits are payable under a State workmen's compensation law "on account of a physical or mental impairment of such individual," did not require that the impairment had to be the same impairment as that on which the individual's disability benefits were based. Nor did it provide that the impairment had to be of any particular severity, the requirement merely being "a physical or mental impairment".

It should be said at the outset that there is no precise indication in Section 224 whether it was meant to cover only those disabilities or impairments which arise from the same injury, or whether any impairment for which a claimant is receiving specified benefits outside the Social Security Act is within the Section's intendment, regardless of the source from which it arose. The legislative history of the Social Security Amendments of 1956, cited by defendant in his brief, is far from precise on the matter. Plaintiff's brief cites Social Security Bulletin, Vol. 20–12, 1957, to the effect that Section 224 "was designed to reduce unwarranted duplication of benefits" but this is not really illuminating.

Both plaintiff and defendant fail to mention, however, that in 1957 an amendment to Section 224 was passed. The amendment provided in part that "for the purposes of this section, the term 'periodic benefit' does not include compensation paid to any individual under laws administered by the Veterans' Administration on account of such individual's service-connected disability". In House Report No. 277, 2 U.S.Code Cong. & Admin.News 1374–76 (1957), the Committee on Ways and Means, in its consideration of the amendment, stated " * * * that persons who are receiving compensation for disability incurred or aggravated as a result of service to their country in its Armed Forces should not be required to give up all or part of the disability insurance benefits which they may have earned under the contributory social-security program. * * *."

It is a cardinal rule of statutory construction that when the legislature has acted to except certain categories from the operation of a particular law, it is to be presumed that it intended to go only so far as it did and that no other exceptions are warranted. C. I. T. Corporation v. Biltmore Garage, 1934, 3 Cal.App.2d Supp. 757, 36 P.2d 247. This appears to be the case here.

While it is true that Section 224 as originally enacted was unclear on the question of duplication, the 1957 amendment by its specific exclusion of servicemen receiving compensation under the Veterans' Administration for service-

connected disabilities, inferentially brought within its purview all other individuals drawing benefits "under a workmen's compensation law or plan of the United States or of a State * * *."

■ Moreover, it is obvious that Congress did not share plaintiff's interpretation that Section 224 applied only to duplicate compensation for the same injury since payments by the Veterans' Administration clearly would not arise from the same injury as would give rise to a claim under the Social Security Act. Had Congress subscribed to plaintiff's interpretation, the 1957 amendment excluding Veterans' Administration payments would have been unnecessary. Congress will not be presumed to have enacted useless legislation. M. H. Pulaski Co. v. United States, 1915, 6 Ct.Cust.App. 291.

In this view, plaintiff's contentions fail. It is apparent that her social security benefit, to which she would otherwise have been entitled, was properly withheld for the period in question by virtue of Section 224.

■ There remains the question of whether plaintiff may be deemed "without fault" in accepting the overpayment, and whether recovery or adjustment of it would defeat the purpose of Title II of the Social Security Act or would be against equity and good conscience.

In this connection plaintiff contends that she was "without fault" in accepting the monthly disability insurance benefits for the period involved. But this argument is weakened by the answers plaintiff gave on her application for these benefits. On that application she agreed to notify the Social Security Administration promptly if she were to receive a payment from another Federal agency or under a Federal or State workmen's compensation law or plan. This application was filed on July 18, 1957. Plaintiff had previously applied for Illinois workmen's compensation benefits which were allowed on July 19, 1957, the day following that on which she filed her application with the Social Security Administration. Yet it was not until after the overpayment had been made in March, 1959 that she filed the required notice.

Moreover, under the Social Security Regulations (No. 4, sections 404.507—404.509, 20 C.F.R.), to be "without fault" an individual has the responsibility to furnish full and accurate information. An individual will be considered "at fault" if the overpayment was the result of a statement which he knew or should have known was incorrect, or the result of failure to give information that he knew or should have known was material to the case. Here the plaintiff cannot deny that she knew, when she filed her application for disability insurance benefits, that she had applied for workmen's compensation.

Furthermore, her contention that she is "without fault" because she relied on an "official publication"—OASI-29 of April, 1957, pages 10–12—is without merit. This same publication, at pages 27–28, discusses the offset provisions of Section 224. If plaintiff misread or misunderstood the pamphlet, or did not read it through, the responsibility of error rests with her.

It is therefore apparent that the hearing examiner's finding that plaintiff was not "without fault" in failing to exercise the necessary degree of care in deciding what information should be reported is supported by substantial evidence.

In view of the fact that the court finds support in the record for the hearing examiner's conclusion that plaintiff was not "without fault" in accepting the overpayment, it is unnecessary to determine whether recovery or adjustment would defeat the purpose of Title II of the Act or would be against equity and good conscience. In this regard, however, it should be pointed out that the hearing examiner's opinion cites testimony to the effect that on the day of the hearing plaintiff had $600.00 in the bank and $150.00 in cash at home, and that she had no debts or obligations of any kind except current medical expenses which would be paid at the end of that month.

For all the foregoing reasons, the decision of the Secretary that plaintiff is not entitled to receive payment of disability insurance benefits for the months of July, 1957 through July, 1958 is affirmed.

An order consistent with the above will be entered.